[Civ. No. 614.   Second Appellate District.—March 16, 1909.]

## S. H. PEARSON, Respondent, v. M. M. POTTER COM-PANY, a Corporation, Appellant.

NEGLIGENCE—OPEN MANHOLE IN SIDEWALK—INJURY TO PLAINTIFF—SUPPORT OF VERDICT—MASTER AND SERVANT—INDEPENDENT CONTRACTOR.—In an action for damages for alleged injury to the plaintiff owing to the negligence of the defendant in permitting a manhole in its sidewalk to remain open, into which the plaintiff fell, *held,* that the support of a verdict for the plaintiff depends upon whether the relation of master and servant existed between the defendant and the servant whose neglect caused the injury, or whether such servant was employed by an independent contractor, for whose negligence the defendant was not responsible.

ID.—WRITTEN CONTRACT WITH HEAD PORTER OF HOTEL—CONSTRUCTION—QUESTION OF LAW FOR COURT.—When a contract claimed by the defendant to be that of the employment of the head porter of defendant's hotel as an independent contractor, one of whose subordinate porters left the manhole open, was wholly in writing, the construction of the written contract is a question of law for the court, and the court properly refused to submit that question to the jury.

ID.—RESERVATION OF CONTROL OF HEAD PORTER AND SUBORDINATES—RELATION OF MASTER AND SERVANT ESTABLISHED.—From the very nature of the employment of the head porter of a hotel, it is one of service; and when his contract of employment expressly reserves the right of the defendant, through its manager, to direct the head porter and all the porters in the performance of their work, which was to be performed in compliance with the manager's instructions, the contract establishes the relation of master and servant between the defendant and all of the porters employed by it.

ID.—RELATIONS OF INDEPENDENT CONTRACTOR AND MASTER AND SERVANT DISTINGUISHED.—An independent contractor is one who, in rendering services, exercises an independent employment or occupation, and represents his employer only as to the results of his work, and not as to the means whereby it is to be accomplished; but the relation of master and servant exists whenever an employee is, in the discharge of his duties, subject to the immediate direction and control of his employers, who may direct not only what shall be done, but how it shall be done.

ID.—SICK BENEFITS OF PLAINTIFF—CROSS-EXAMINATION—HARMLESS EXCLUSION.—When the defendant had not pleaded the reception of sick benefits from a fraternal organization by the plaintiff in

mitigation of damages, it was not prejudicial error for the court to disallow cross-examination on that subject, as testing plaintiff's credibility, it appearing that it could not have the slightest influence in weighing plaintiff's testimony, and that it cannot be assumed that the jury would have attributed an improper motive to the plaintiff in remaining in bed to obtain such benefits, in view of the independent testimony of his physicians and others that it was necessary for him to do so.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

Gray, Barker & Bowen, for Appellant.

Jones & Drake, for Respondent.

SHAW, J.—Action to recover damages alleged to have been sustained by plaintiff as a result of stepping into a manhole negligently left open by defendant. This manhole was in the sidewalk adjoining the Van Nuys hotel on Fourth street, in the city of Los Angeles. The hotel was under the control and management of defendant, and the manhole, when not used as a means of access to the basement of the hotel, was closed by an iron cap or cover placed upon the opening. It is alleged that on May 29, 1906, defendant removed this cap and negligently permitted the manhole to remain open and unguarded, and that while thus left open and unprotected plaintiff, while walking along the sidewalk, stepped or fell into the same, thereby, without any fault on his part, receiving the injuries for which he asks damages.

In addition to denying the allegations of the complaint, defendant, by its answer, avers that it had no control over the manhole and nothing whatever to do with its use or management, for the reason that it had, prior to the alleged injury to plaintiff, and ever since, by a special contract, given to one Thomas J. Dunnigan entire control, supervision and charge of the porter service in said hotel; that under such contract said Dunnigan had full power to employ and discharge porters of the hotel and pay them out of his own funds, and to control their conduct and labors in and about

the hotel, and that as to such porter service he was an independent contractor; that if said manhole was left open, as alleged by plaintiff, it was so left open by one of the porters employed by and under the control of said Dunnigan, and not by any person connected with the management of the hotel, or under the control or direction of defendant.

The case was tried before a jury, which rendered a verdict in the sum of $2,000, the judgment for which, upon the hearing of defendant's motion for a new trial, plaintiff consenting thereto, was reduced to the sum of $1,844. The appeal is from the judgment thus modified, and an order of the court denying defendant's motion for a new trial.

Appellant's chief contention is that the court erred in refusing to submit to the jury the question whether or not Dunnigan was an independent contractor, but, on the contrary, did instruct the jury that at the time of the injury he was a servant and employee of the defendant, and that any act of negligence, either by Dunnigan or the men so employed by him, was the act of defendant.

The evidence tended to show that one of the men, Harry Carrier, employed and working under the direction and supervision of Dunnigan, and while engaged in the performance of his labors, left the manhole open. The employment of Dunnigan was by a written instrument, as follows:

"Agreement. Los Angeles, California, February 1st, 1906. I, Thomas Dunnigan, and five men, hereby agree to the following conditions, if employed by the M. M. Potter Company: First, it is understood that my salary is to be at the rate of $145 per month. Board? Yes. Second, the M. M. Potter Company does not employ me for any specified length of time, but only for such time as my services may be required. Third, I will at all times conform to and comply with such instructions as may be given me by the manager, or such person or persons as he may designate. Signed, in writing, Thomas J. Dunnigan. Department, Porters. Position, head porter."

The relation of Dunnigan to defendant is, therefore, a matter of written contract between him and defendant, and the interpretation of that contract, like any other written instrument, is a question of law for the court to determine. Hence, there was no error on the part of the court in refusing to submit the matter to the jury. (16 Am. & Eng. Ency.

of Law, p. 192; *Linnehan* v. *Rollins*, 137 Mass. 123, [50 Am. Rep. 289].)

Neither was there any error in the instruction given by the court to the effect that Dunnigan, under this contract, was a servant and employee of defendant. From the very nature of the employment it is difficult to conceive of a hotel porter being an independent contractor. The employment is one of service, as much so as the employment of a waiter or chambermaid. The character of the service is wholly inconsistent with freedom from constant supervision and direction from the one for whose benefit the service is performed. But, however this may be, the contract under which Dunnigan was employed shows that defendant reserved to itself the right of directing Dunnigan and those under him in the performance of their work. It contains an express provision to the effect that his duties, which includes those under him, should be performed in compliance with the instructions given him by the manager of defendant, or by such person as the manager might designate. In full accord with this provision, defendant's manager testified that when he wanted anything done in the porter service he spoke to his assistant and the assistant spoke to the head porter. This assistant testified: "I very often gave Dunnigan verbal instructions, or asked him to do certain things." Dunnigan himself testifies: "I was under the direction of the manager, and Harry Carrier (the man who left the manhole open) was under my direction." There can be no question but that Dunnigan, the head porter, and the men under him, in the performance of their duties, were under the supervision and control of defendant—a position wholly inconsistent with the relation of an independent contractor. "The relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished; or, in other words, not only what shall be done, but how it shall be done." (26 Cyc., p. 966.) "Where a person in the employment of another is, in the discharge of his duties, subject to the immediate direction and control of his employer, he is properly described as a servant." (*Gravatt* v. *State*, 25 Ohio St. 168; *Linnehan* v. *Rollins*, 137 Mass. 123, [50 Am. Rep. 287]; *Pioneer Fire-Proof Construction Co.* v. *Hansen*, 176 Ill. 100, [52 N. E. 17]; *Atlantic Transport Co.* v. *Coneys*, 82 Fed. 177,

[28 C. C. A. 388] ; Shearman & Redfield on Negligence, sec. 177 ; Hale v. *Johnson,* 80 Ill. 185.)   In volume 16 of American and English Encyclopedia of Law, page 187, the author cites a number of cases in support of the rule that "an independent contractor is one who, in rendering services, exercises an independent employment or occupation, and represents his employer only as to the results of his work, and not as to the means whereby it is to be accomplished." This rule is in full accord with the doctrine enunciated in the cases cited by appellant, the facts in none of which, in our judgment, are analogous to the case at bar.   From what is said upon this subject it is apparent the court did not err in denying defendant's motion for a nonsuit.

On cross-examination plaintiff was questioned with regard to his being a member of certain fraternal organizations and asked if he had not for a period of thirteen weeks received from such organizations sick benefits in the sum of $12 per week, to which the court sustained an objection.   Such fact had not been pleaded in reduction of damages sustained, but appellant contends that it was proper cross-examination for the purpose of showing plaintiff's motive in confining himself to his bed for a period of several weeks, and that the answer, if in the affirmative, was a proper matter for consideration by the jury as affecting the credibility of the witness.   Without holding the ruling to be error, we think the court might have properly permitted the question ; but treating it as erroneous, we cannot believe the showing of the fact that plaintiff received sick benefits could have had the slightest influence with the jury in weighing plaintiff's testimony.   If it be conceded that the question was a proper one to be put to the plaintiff to test his credibility, the refusal of the court to permit it to be answered did not in any way prejudice the defendant or its case.   Had it been answered in the most favorable way that the defendant could have expected, to wit, that the plaintiff had received such sick benefits for the time which he remained in bed, it could not be assumed that, therefore, the jury would have attributed an improper motive to him for his remaining in bed, in the face of the independent testimony of his physicians and others that it was necessary for him to do so.   In view of its harmless character, the cases cited by appellant have no application.

It is unnecessary to discuss other points made by appellant, other than to say that they are without merit.

The judgment and order appealed from are affirmed.

Allen, P. J., and Taggart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on April 15, 1909, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 13, 1909.