[Civ. No. 2425.   First Appellate District.—July 2, 1918.]

FRITZ MAUCHLE, Respondent, v. PANAMA–PACIFIC INTERNATIONAL EXPOSITION COMPANY (a Corporation), et al., Appellants.

NEGLIGENCE—COLLISION WITH AUTOMOBILE OF EXPOSITION COMPANY— INJURY TO PEDESTRIAN—NEGLIGENCE OF SUPERINTENDENT OF GROUNDS —EVIDENCE—USE ON PRIVATE BUSINESS.—An exposition company cannot be held liable for damages for personal injuries received by a pedestrian from a collision with an automobile owned by the company and negligently driven by its superintendent of grounds, where at the time of the accident the superintendent was on his way home from work, where the machine remained until taken to the grounds, where it was kept nights.

MOTOR VEHICLE LAW—KEEPING TO RIGHT—CONSTRUCTION OF STATUTE. The provision of the motor vehicle law (Stats. 1913, p. 648) that the person in control of any vehicle moving slowly along and upon any public highway shall keep such vehicle as closely as practicable to the right-hand boundary of the highway, allowing more swiftly moving vehicles reasonably free passage to the left, is elastic, and does not attempt to lay down a definite and rigid rule as to the distance which the slowly moving vehicle must keep from the curb.

EVIDENCE—DISTRUST OF FALSE WITNESS—INSTRUCTION.—The failure to instruct the jury that a witness false in one part of his testimony is to be distrusted in others is not error where the instruction is not requested.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   John Hunt, Judge.

The facts are stated in the opinion of the court.

Brittain & Kuhl, and Everett A. Ingalls, for Appellants.

Chas. O. O'Callaghan, and Edmund Nelson, for Respondent.

THE COURT.—Plaintiff sued the defendant for damages claimed to have been caused to him by being run down by an automobile owned by the defendant, Panama-Pacific International Exposition Company, and driven by L. I. Fulcher, the other defendant.   He prevailed.

The plaintiff, while on his way home from work on the evening of October 6, 1915, was proceeding westerly on Geary

Street pushing a hand-cart of the type used about railroad stations, warehouses, and stores to move heavy boxes and parcels. Upon this truck the plaintiff had loaded some empty boxes. Proceeding westerly from Fillmore Street he kept near the curb line until he crossed Devisadero Street. From that point westerly the street, except between the car-tracks, is paved with blocks of stone. Observing no approaching car or other vehicle, and thinking to avoid the jolting of his load by the rough street, he moved over on the west-bound car track where the space between the rails was smooth. He had proceeded but a short distance westerly from Devisadero Street when he suddenly heard the purring of an automobile engine behind him, and almost at the same instant he was struck in the back and pushed over on to the hand-cart. The grade at this point is up-hill, and the car which struck him stopped within a very short space. There was some conflict of evidence as to his injuries, but it may be said that the finding that he was injured is supported by the evidence.

It is contended in behalf of the appellant corporation that there was no showing that the defendant Fulcher at the time of the accident was performing any duty which he owed to the Exposition Company, or was using the automobile with its consent or knowledge. The respondent, answering this contention, quotes the following testimony to show liability on the part of the Exposition Company:

"Mr. Nelson: Q. Mr. Fulcher, . . . on the 6th of October, 1915, by whom were you employed?

"A. The Panama-Pacific Exposition.

"Q. How long had you been employed by that company?

"A. I should say approximately two and a half years or three at that time.

"Q. From the beginning of their work?

"A. Practically.

"Q. Are you still employed by that company?

"A. Yes, sir.

"Q. What was your particular duty in that service?

"A. I was superintendent of grounds.

"Q. The automobile that has been under discussion here, was that owned by you or by the company?

"A. By the Exposition Company.

"Q. Was that used by you in the service of the company?

"A. Yes, sir.

"Q. On this particular day at the time of this occurrence you had come from the grounds, had you, of the Exposition Company?

"A. Yes, sir.

"Q. And where were you going?

"A. I was on my way home at that time when the accident occurred.

"Q. Where did you keep this automobile overnight, say, when you went home?

"A. Why, it usually worked all night, and stayed out at my house until 10 o'clock and then down to the grounds.

"Q. You were bringing it to your house on this particular night? Where were you taking this automobile?

"A. I was going home with it.

"Q. Did you have a garage at your house to keep it in?

"A. No, sir.

"Q. After you got home with it what would become of it, what would be done with it?

"A. It stood in front of my house.

"Q. And then later what would you do?

"A. My night foreman came and got it or I took it to the grounds along about 10.

"Q. That automobile was ordinarily kept on the grounds of the Exposition Company?

"A. Yes, sir.

"Mr. Nelson: That is all."

The ownership of the automobile by the Exposition Company is admitted, and the employment of Fulcher in the capacity of superintendent of grounds, as shown in the above testimony, is not disputed; but it is claimed that Fulcher, at the time of the accident, was not using the automobile within the scope of his employment nor upon any business or affair of the Exposition Company.

The foregoing testimony being the only evidence quoted in the attempt to show responsibility on the part of the Exposition Company, seems to us to fall far short of so doing. Respondent relies upon the case of *Chamberlain* v. *California Edison Co.*, 167 Cal. 500, [140 Pac. 25], but the employee in that case had been ordered by another employee of the company, who had the right to give him instructions, to do the thing which he was doing at the time that his negligence caused the injury to the plaintiff in that case; and the defend-

ant corporation in that case reaped the financial benefit of the work which he was performing at that time, the facts being briefly, as stated in the opinion in the case, as follows: "Sterling, the storekeeper, ordered Rosso, the chauffeur, to go to the residence of Lighthipe with the company's truck, of which Rosso was the driver, and to bring Lighthipe's motor car to the shop which the corporation maintained for the repair of its own motor vehicles. This order was obeyed, and while Rosso was towing Lighthipe's automobile, Caleb Chamberlain was injured through the carelessness and negligence of Rosso. Lighthipe's automobile was repaired at the company's shop. A bill was rendered by the corporation therefor and paid by Lighthipe." This plainly showed that Rosso was acting within the scope of his employment at the time of the accident in that case.

The respondent relies further upon the case of *Jessen* v. *Peterson, Nelson & Co.*, 18 Cal. App. 350, [123 Pac. 219]. In that case the injury was due to the negligence of one Nelson. The defendant was engaged in general contracting and construction work in the city and county of San Francisco. Nelson was an officer, namely, the vice-president, of the defendant company, and had the right to operate the buggy. In so operating it "he had no regular hours whatsoever. He had to go around all over the city sometimes; he had to go out to the park and Richmond, where the corporation was working at times. He had to go everywhere and see that the work was all right. From this it appears that in addition to being vice-president of the company Nelson was also general superintendent of its work, and in the performance of his duties he had a roving commission, which permitted him to look after the business of the defendant at the times and in the manner which best suited his own convenience." This presents a far different case from the relation sustained by Fulcher to the Exposition Company. The evidence above quoted does not show that Fulcher was in any way serving the Exposition Company at the time of the accident in this case; nor does it present any evidence tending to so show.

It is contended that Fulcher's use of the automobile was a convenience which enabled him to perform his duties more expeditiously in moving about from place to place where he was needed. But while this may be true, the above-quoted evidence—which we assume from respondent's brief is the only

evidence showing that Fulcher was performing duties for the Exposition Company at the time of the accident—fails completely to show that he was about the business of the Exposition Company at the time of the accident. We think the verdict not supported by the evidence so far as the Exposition Company is concerned, and as to that defendant the judgment will be reversed.

Unless it must be said that the respondent was guilty of contributory negligence in not staying closer to the right-hand curb in his journey, this judgment may not be reversed as to Fulcher. Paragraph i of section 20 of chapter 326 of the Statutes of 1913 (Stats. 1913, p. 648), has this provision: "The person in control of any vehicle moving slowly along and upon any public highway shall keep such vehicle as closely as practicable to the right hand boundary of the highway, allowing more swiftly moving vehicles reasonably free passage to the left." There is a similar provision in section 6 of Ordinance No. 1857 of the city and county of San Francisco. These provisions of the law are elastic. They do not attempt to lay down a definite and rigid rule as to the distance which the slowly moving vehicle must keep from the curb. Convenience, condition of the street, freedom of the street from other vehicles, or, on the other hand, its more or less crowded condition, must all be taken into consideration in determining the position upon the street which the slowly moving vehicle must occupy in order that the person propelling it or driving it shall be free from negligence. In this case the evidence was of such a character that we are not prepared to say that Mr. Mauchle was guilty of contributory negligence in moving along the west-bound car-track instead of keeping close up to the curb. It does not appear that there was not plenty of room for free passage by Fulcher to the left of Mauchle. Some discretion must be left to juries and trial courts in such cases; and we think in this case that we cannot hold as a matter of law that Mauchle was guilty of contributory negligence. There are other elements, such as that the night was foggy, which are urged by appellant to show contributory negligence on the part of Mauchle, but we cannot say, as a matter of law, that they do so. It is also urged that there is no evidence that Fulcher was guilty of any negligence; but the testimony of the plaintiff and other witnesses is sufficient to support the plaintiff's contention that the lights on Fulcher's machine were not

lit and that he blew no horn nor made any other sound when approaching Mauchle. An attempt is made to demonstrate that from the mechanism of Fulcher's machine his lights went out when he stopped it, and that thus Mauchle was deceived into supposing that it had no lights, whereas its lights had been burning up to the time it stopped; but the jurors were the judges as to whether this mechanical demonstration or the positive testimony of the plaintiff was true; and they accepted the positive testimony of the plaintiff that the lights were not lighted on the machine. They accepted the evidence of the witness as against the mechanical argument, and we are not in a position to determine that they were wrong.

The appellant contends that the trial court should have instructed the jury that a witness false in one part of his testimony is to be distrusted in others, as provided in subdivision 3, section 2061, of the Code of Civil Procedure. The reply is that the instruction was not asked. Counsel, however, contend that the defendants had the right to rely upon the court to give those instructions which, under the code, the court is bound to give. That section of the code, however, provides only that the court shall give this instruction as it provides that others of a similar nature shall be given—on proper occasions. We are not inclined to lay down a rule that would place upon trial judges the burden of determining that such instruction shall be given unless the request therefor is made by the party desiring it.

As to Fulcher, the judgment will be affirmed.