[L. A. No. 18023.   In Bank.   Dec. 29, 1941.]

ADDIE B. RICHARDS, Appellant, v. METROPOLITAN LIFE INSURANCE COMPANY (a Corporation), Respondent.

Rodney F. Williams, Charles A. Son and Joseph D. Taylor for Appellant.

Chase, Barnes & Chase and Laurence A. Peters for Respondent.

McConnell & Kearney, Eugene Kelly, F. Britton McConnell and Walter F. Keen, as Amici Curiae, on behalf of Respondent.

CURTIS, J.—This is an appeal by the plaintiff from a judgment of nonsuit in behalf of defendant Metropolitan Life Insurance Company. At the close of plaintiff's evidence said defendant moved for a nonsuit, which was granted, followed by the present judgment.

On March 17, 1937, the daughter of plaintiff, while riding as a guest in an automobile, was injured in a collision between the automobile in which she was riding and an automobile driven and owned by the defendant Charles Lehman. The injuries received resulted in the death of plaintiff's daughter. This action was instituted to recover damages sustained by plaintiff by reason of the death of her daughter, and both Charles Lehman and his employer, Metropolitan Life Insurance Company, were named as defendants in the action.

At the time of said accident defendant Lehman was, and for a year and one-half prior thereto had been, in the employ of the defendant Metropolitan Life Insurance Company. His duties were the soliciting of insurance, the delivery of policies to policyholders, the collection of insurance premiums upon policies secured, and the delivery of said premiums to the defendant company at its office in the city of Los Angeles. He testified as follows: "I would spend about an hour or an hour and a half a day in the office, compared with from 6 to 12 hours a day in the field, some of which time was spent before I went to the office, and some of the time after I went to the office in the morning. If I had a sale or some other service call to make early in the morning I would make it before going to the office, but rarely would I ever spend over half an hour in the field prior to reporting to the office in the morning."

He used his own car in soliciting insurance, in delivering policies, in collecting premiums and in trips to the office, and he paid all expense of maintaining and operating the same.

He traveled from 35 to 75 miles daily in the course of his work. His agreement with the company required him to make a daily report and payment of money collected to the company at its office. As a rule he deposited the day's collections the next morning after they were made, but frequently he would carry the money around with him a day or two after it was collected. He was required to attend daily meetings at the office in the morning. He was on a salary and in addition thereto, was paid commissions on certain premiums collected. He had no certain hours when he was required to work for the company, but he had done no other work than that pertaining to his present employment since he began to work for the company.

On the morning of the accident Lehman was on his way to the office of the company to attend a meeting of the agents and to deliver premiums collected on the day previous. He made no calls that morning on behalf of the company, but went directly from his home, and on his way to the office he met with the accident.

Under a stipulation of the parties to the action the trial court first received evidence upon the issue as to whether the defendant Metropolitan Life Insurance Company (hereinafter referred to as the company) was liable for the acts of Lehman. This issue involved the status of Lehman in his relation to the company; that is, was he an agent of the company or an independent contractor, and if he was an agent of the company, whether or not he was at the time of the accident acting in the course and scope of his employment. Upon the facts as hereinbefore set out, the trial court granted the defendant company's motion for a nonsuit on the ground that there was no evidence which tended to prove that Lehman was an agent of the defendant Metropolitan Life Insurance Company, or if he was an agent of said company, that he was acting within the course and scope of his employment for or on behalf of the company at the time of the occurrence of the accident. From this judgment the plaintiff appealed.

It is unnecessary here to reiterate the well-established rule in this state respecting the power of the court to grant a nonsuit, as stated in innumerable decisions of this court, a number of which are cited in *Estate of Lances,* 216 Cal. 397, 400 [14 Pac. (2d) 768], and in *Robinson* v. *George,* 16 Cal. (2d) 238, 241 [105 Pac. (2d) 914]. Neither do we

think the facts of this case justify any extended discussion of the question as to whether Lehman was an agent of the company or an independent contractor. Clearly under the facts before the trial court and as hereinbefore set out, Lehman was not an independent contractor, but, on the other hand, was an agent of the company in soliciting insurance for the company and in the performance of his other duties incidental thereto. (*Press Publishing Co.* v. *Industrial Acc. Com.*, 190 Cal. 114, 121 [210 Pac. 820] ; *Hillen* v. *Industrial Acc. Com.*, 199 Cal. 577, 581 [250 Pac. 570] ; *Globe Indemnity Co.* v. *Industrial Acc. Com.*, 208 Cal. 715, 718 [284 Pac. 661] ; *Robinson* v. *George, supra; Pearson* v. *M. M. Potter Co.*, 10 Cal. App. 245, 248 [101 Pac. 681] ; *Dillon* v. *Prudential Ins. Co.*, 75 Cal. App. 266, 272 [242 Pac. 736] ; *Curcic* v. *Nelson Display Co.*, 19 Cal. App. (2d) 46, 51 [64 Pac. (2d) 1153].)

The one serious question involved herein is whether Lehman was at the time the accident occurred, acting within the course and scope of his employer's business. In support of the judgment of nonsuit the respondent relies upon the following cases: (*Nussbaum* v. *Traung Label & L. Co.*, 46 Cal. App. 561 [189 Pac. 728] ; *Martinelli* v. *Stabnau*, 11 Cal. App. (2d) 38 [52 Pac. (2d) 956] ; *Gordoy* v. *Flaherty*, 9 Cal. (2d) 716 [72 Pac. (2d) 538] ; *Humphry* v. *Safeway Stores, Inc.*, 4 Cal. App. (2d) 589 [41 Pac. (2d) 208] ; *Kish* v. *California State Automobile Assn.*, 190 Cal. 246 [212 Pac. 27] ; *Mauchle* v. *Panama-Pacific International Exposition Co.*, 37 Cal. App. 715 [174 Pac. 400] ; *Postal Telegraph Cable Co.* v. *Industrial Acc. Com.*, 1 Cal. (2d) 730 [37 Pac. (2d) 441, 96 A. L. R. 460] ; and *Holopoff* v. *Industrial Acc. Com.*, 131 Cal. App. 554 [21 Pac. (2d) 649].)

In the Nussbaum case the employee, who used his employer's car in the performance of his duties, at the close of business left the car at a garage and the next morning drove the car from the garage, and on his way to breakfast he met with an accident; and in the Martinelli case the employee, who used his employer's car in the performance of his duties, was on his way home to lunch when he met with an accident. In each of these cases it was held, and we think properly, that the employee was on an errand of his own at the time of the accident and was not acting within the course or scope of his employer's business. In the Gordoy and Humphry cases the

employees departed from the course of their employers' business, one to take the mother of a fellow employee home, the other to mail a report. In those cases it was held that the accident did not happen when the employees were in the course of their employers' business. In the Kish case the employees had finished their day's work, returned to their hotel, changed their clothes and were on the way to supper in their employer's machine, which was being driven by one of them, when the accident happened. It is true that they were using their employer's machine, but it was held that that fact did not make their employer liable, as the use of the machine in going to their meals "was permitted solely for the accommodation of the employees themselves."

The facts of the present case do not bring it within any rule announced in either the Nussbaum, Martinelli, Gordoy or Humphry decisions, as the employee in each of those four cases had admittedly departed from his employer's business and was engaged in an errand of his own at the time of the accident. The employee Lehman on his way to the place of business of his employer, did not on the morning of the accident deviate from the direct and usual route from his home to said place of business. While the accident occurred before he reached his employer's place of business, no claim is made that it did not happen on the direct route from Lehman's home to the office of the company. Neither can it be said that the Kish case has any application to our present problem. There, as already stated, the employees of the company after the completion of their day's work, returned to their home and after changing their clothes, left the house for the purpose of having supper down-town. They were then on a mission of their own, in which their employer had no direct interest. In each of the remaining three cited cases—the Mauchle, Postal Telegraph and Holopoff cases— the employer had a fixed place of business to which the employee was required to report before he began his day's work and which he left at the close of the day when his work for the day was finished. In the Mauchle case the employee was on his way home from his employer's place of business, after he had finished his day's work, and he met with an accident. In the Postal Telegraph case the employee was a messenger boy and was on his way to the office of his employer to begin his day's work when he met with an accident. And in the

Holopoff case the employee was a delivery boy and he, too, was on his way to his work on the morning of the accident. These three last-mentioned cases were held to be within the so-called "going and coming" rule, and compensation was denied the injured employees on the ground that neither of them was at the time he sustained his injury, acting within the scope of his employment nor was he at that time performing any service for his employer.

In the present case while Lehman was required to report daily to his employer at its place of business, there is no evidence to show that his duties for the day did not begin until he had reached the office or place of business of his employer. On the other hand, there is positive evidence to the contrary, which is not denied, and in this case where a motion for a nonsuit was granted, it would make no difference if it were denied. Lehman's duties were twofold: one part to be performed in the office of the company and the other, outside of the office and in the territory allocated to him by the company. He spent as a rule an hour and a half in the office and from 6 to 12 hours a day in the field. There was no requirement that he should attend to his office duties before he began his work in the field. Some times he went to the office first and at other times he spent time in the field before going to the office. This is shown by the following excerpt from his testimony: "Some of which time [referring to his day's work] was spent before I went to the office and some of the time after I went to the office in the morning." The present case, therefore, differs from those cases wherein the duties of the employee were to be performed at a designated place or did not commence until he had arrived at his employer's place of business. In the latter class of cases the "going and coming" rule applies and governs the rights of the parties. In the present case as the employee left his home in the morning, it was optional with him whether he would first go to the office of the company or whether he would go into the field for the purpose of collecting a premium or delivering a policy. In the performance of each of these acts the employee was acting within the course and scope of his employment; or, to put it differently, the scope of his employment comprehended and included both an office visit and a visit to a policyholder or to a prospective policyholder, and there was no requirement of the company as to which

of these two acts he was to perform before the other. These duties to report to the office and to perform service in the field defined the scope of his employment, and when he was engaged in either, it cannot be said that he was not acting within the course of his employment.

The present case is in many respects strikingly similar to the case of *Dillon* v. *Prudential Ins. Co., supra*. That was an action to recover damages for personal injuries sustained by the plaintiff by reason of the negligence of the agent of the defendant insurance company. The contract under which the agent of the Prudential Insurance Company was employed was in all material respects like that under which Lehman was employed by the defendant Metropolitan Life Insurance Company. The accident happened in the morning while the agent was on his way to the office of his company to report to his company and attend a meeting of agents, but before he had reached the company's office. In the respects just related the facts of the two cases are precisely alike. The appellate court sustained the judgment in plaintiff's favor and in so doing, ruled, at page 271, that the agent ''was employed to 'cover' a specified territory, in which the accident happened, and to perform a multitude of duties therein. As a part of his duties he was obliged to go to the meeting at the Company's office. His duties were field duties. . . . This distinguishes this case from the authorities dealing with situations where an employee was on his way to a restricted, definite, exclusive business office or place of employment.'' This language is convincingly applicable to the situation in the present case in view of the similarity between the facts of the two cases. There the court held that the place of the agent's employment was not at the office of the company, but it covered a specified territory in which the agent was to perform his duties. So in the case now before us, the place of Lehman's employment was not at the office of the company, although he did spend some time there, but it covered the entire territory in which he solicited insurance, as well as the company's office.

In the case of *Kish* v. *California State Automobile Assn., supra*, the employees were employed by the association in the work of installing road signs and used in this work a truck of the defendant association. In the course of its opinion the court stated at page 250: ''It may be conceded that the use

of the truck for transportation to and from their work to their home was for the benefit of the employer indirectly for the reason that it permitted them to devote more time to accomplish the results of installing road signs, for which they were employed. Also, from the fact that they had what may be termed a 'roving commission,' having no fixed hours of employment and no fixed place of employment, it may be admitted that their employment commenced when they left the house in the morning and did not terminate until they returned in the evening. This point was, however, the utmost boundary of their employment and was not enlarged by the fact that they were permitted the use of the truck in going to places to get their meals.''

Under these authorities it cannot be questioned, had Lehman at the time of the accident been on his way from his home to one of the policyholders of the company for the purpose of delivering a policy or collecting a premium, or on his way to a prospective policyholder for the purpose of selling insurance in his company, that he would have been acting in the scope and course of his employment, and the company would be liable for any tort committed by him on either of said occasions. Lehman's duty to report to the office of the company to deliver premiums collected and to attend agents' meetings was in the same class with the duties performed by him in the field, and could be performed either before or after the field duties. As there was no requirement that he should first report to the office before he began his day's duties, he was deemed to have entered upon his duties when he left his home to proceed to the first place to which his duty called him. (*Fenton* v. *Industrial Acc. Com.*, 44 Cal. App. (2d) 379 [112 Pac. (2d) 763].) In that case the rule is stated at pages 383-384 as follows: "In 27 California Jurisprudence, at page 383, it is said that when a workman is engaged in traveling from place to place without the necessity of reporting at a particular place of business, he may be deemed to enter upon his employment when he leaves his home to proceed to the first place to which his duty calls him, 'where an employee is not required to report for work at any particular place but travels in the course of his duties, since in such case he immediately enters upon his employment when he leaves his home to proceed to the first place to which duty calls him.' The foregoing text is supported

by several cases cited in the Industrial Accident Reports.'' In the Fenton case the Industrial Accident Commission had denied compensation to the wife of the employee who was killed while investigating applications for relief in behalf of the California State Relief Administration. The court annulled the action of the commission and directed it to make an award in favor of the wife of the deceased.

In the present case we are not called upon to hold that Lehman was acting within the course of his employment at the time of the accident, but only to determine whether there was any substantial evidence before the court at the time the motion for a nonsuit was made and granted, which tended to show that Lehman at that time was performing such a service in behalf of his employer. As we view this evidence, we are of the opinion that it was sufficient to have supported a verdict in favor of the plaintiff had the court permitted the case to have gone to the jury.

The judgment is reversed.

Gibson, C. J., Shenk, J., Houser, J., and Carter, J., concurred.

Respondent's petition for a rehearing was denied January 27, 1942. Edmonds, J., and Traynor, J., voted for a rehearing.