[Civ. No. 2114.   Third Appellate District.—March 15, 1920.]

## CARL F. NUSSBAUM, Respondent, v. TRAUNG LABEL & LITHOGRAPH COMPANY (a Corporation), et al., Appellants.

[1] MASTER AND SERVANT—TORT OF SERVANT—LIABILITY OF MASTER.—Where the relation of master and servant exists, the master is responsible to third persons for the damage caused by the wrongful acts or omissions of his servants in the course of their employment.

[2] ID.—TEST OF MASTER'S LIABILITY.—The test of liability of the master for the torts of his servant in all cases depends upon the question whether the injury was committed by the authority of the master, expressly conferred, or fairly implied from the nature of the employment and the duties incident to it; and, in determining the question of authority, the object, purpose, and end of the employment is to be regarded.

[3] ID.—TORTS COMMITTED OUTSIDE SCOPE OF EMPLOYMENT.—When a servant acts without any reference to the service for which he is employed, and not for the purpose of performing the work of his employer, but to effect some independent purpose of his own, the master is not responsible in that case for either act or omission of the servant.

[4] ID.—INJURY BY DRIVER — SCOPE OF EMPLOYMENT — ACTION FOR DAMAGES—INSUFFICIENCY OF PROOF.—In this action against the driver of an automobile and his employer for damages for personal injuries sustained through having been run into while crossing a public street, the accident having occurred prior to the driver's hours of work, the plaintiff failed to sustain the burden resting upon him of proving that such driver was engaged in some act or the execution of some purpose which, while not of the actual duties of his employment, was an incident to his duties as an employee.

1. Imputing servant's negligence to master, notes, **Ann. Cas.** 1912A, 648; 8 **L. R. A.** (N. S.) 635; **L. R. A.** 1915A, 763.

Liability of owner of automobile for acts or negligence of chauffeur or agent, notes, 10 **Ann. Cas.** 732; 12 **Ann. Cas.** 972; **Ann. Cas.** 1914C, 1087; **Ann. Cas.** 1915D, 476; **Ann. Cas.** 1916A, 659; **Ann. Cas.** 1917D, 1001, 1008; **Ann. Cas.** 1918D, 241, 1134.

3. Liability of owner where automobile is being used by servant or another for his own pleasure or business, notes, 1 **L. R. A.** (N. S.) 235; 9 **L. R. A.** (N. S.) 1033; 14 **L. R. A.** (N. S.) 216; 21 **L. R. A.** (N. S.) 93; 26 **L. R. A.** (N. S.) 382; 33 **L. R. A.** (N. S.) 79; 37 **L. R. A.** (N. S.) 834; 47 **L. R. A.** (N. S.) 662; **L. R. A.** 1916A, 957.

APPEAL from a judgment of the Superior Court of Los Angeles County. L. H. Valentine, Judge. Affirmed in part; reversed in part.

The facts are stated in the opinion of the court.

Duke Stone for Appellants.

L. S. Arnold for Respondent.

HART, J.—This is an action for personal injuries. The case was tried by the court, sitting without a jury, and judgment was awarded the plaintiff for the sum of $439.25 against the defendants, the Union Label & Lithograph Company and R. W. Hornbeck. The defendant, Traung Label & Lithograph Company, was acquitted by the court of any culpability in connection with the cause of the injuries complained of by plaintiff, and was, accordingly, awarded judgment for its costs. The appeal here is by the other defendants, The Union Label & Lithograph Company and Hornbeck, from the judgment against them.

The Union Label & Lithograph Company was, at the time the injuries complained of by plaintiff were received by him, the agent in Southern California of the Traung Label & Lithograph Company for the purpose of selling the latter's labels in that part of California. The defendant, Hornbeck, was in the employment of the Union Company (as for the sake of brevity we will hereafter refer to said corporation, The Union Label & Lithograph Company) as a salesman. For the purpose of facilitating the discharge of Hornbeck's duties as a salesman of said articles, the Union Company furnished him with an automobile. It appears that the automobile so furnished was the property of the Traung Company, but had been let or turned over by said company to the Union Company for the latter's use.

The general facts of the accident resulting in the injuries to the plaintiff are substantially as they are given in the following findings of the court: "That, on or about the sixth day of October, 1917, at the hour of about 8:55 o'clock in the forenoon of said date, while plaintiff was walking across Broadway at the north side of the intersection of Eighth Street, in a westerly direction, in the city of Los

Angeles, the defendant, R. W. Hornbeck, who was then and there an agent and employee of the defendant corporation, The Union Lithograph Company, and who was then and there operating and driving an automobile . . . for the use and benefit of said defendant corporation, The Union Lithograph Company, did then and there willfully, negligently, wantonly, carelessly, and with wanton and reckless indifference to the safety of said plaintiff, drive and propel said automobile against said plaintiff and knocked him down, and in order to save himself from severe injury and while in the act of falling said plaintiff grabbed the left fender of said automobile and was then and there dragged by said automobile for a distance of upwards of ten feet before said automobile came to a stop, and thereby sustained the following injuries: [describing them].

"That plaintiff, upon entering the crossing of said intersection, did look in both directions to see whether or not there were any approaching motor vehicles, and did observe the said automobile driven by said defendant, R. W. Hornbeck, approaching from a southerly direction and about two hundred feet away and proceeded to cross said intersection until he was obliged to stop by reason of the fact that there was on the westerly street-car tracks a street-car which was slowly proceeding in a southerly direction on such street-car tracks, but, while plaintiff did not use ordinary care in that he failed to look both ways after proceeding across said intersection, yet, the negligence of the said defendant, R. W. Hornbeck, was the proximate cause of the injuries so sustained by said plaintiff, in that he did not attempt, after discovering the location of said plaintiff in the middle of said street, to avoid the collision by stopping the said automobile; that he had control of said machine, that he saw plaintiff when at a distance of not less than twenty-five feet away from him, and that he could have stopped said automobile had he not been entirely indifferent to the safety of said plaintiff, and could have avoided striking plaintiff."

The general contentions of the appellants are that the findings are not supported by the evidence and that the evidence without conflict shows that the plaintiff himself was guilty of negligence proximately contributing to the injuries he sustained.

The court, it will be observed, found that, while the plaintiff, in attempting to make the street crossing, failed to exercise that degree of care which is required of a pedestrian when in the act of passing over or across streets or highways, the evidence nevertheless disclosed that Hornbeck saw the plaintiff in the act of crossing the street at a sufficient distance from the automobile he (Hornbeck) was driving in ample time to have enabled him, by the exercise of ordinary care, to avoid a collision of the machine with the plaintiff, and that it was the want of such care that was the proximate cause of the accident and its consequences. In other words, the court held that the facts developed a case to which the doctrine known as the last clear chance or opportunity applied.

We are satisfied, from an examination of the evidence, that the court was therefrom clearly justified or warranted in finding that Hornbeck was negligent and that it was his negligence which was responsible for and directly caused the injuries to plaintiff. Hornbeck admitted that he saw the plaintiff in the act of crossing the street and that, although as he approached him, he slackened the speed at which he had previously been traveling, he did not stop the machine until it struck the plaintiff. And from the testimony of other witnesses, who saw the accident, it is clear that Hornbeck saw the plaintiff in the street in time to have stopped his machine before reaching him and, therefore, knew that plaintiff was in a position of peril.

The plaintiff testified that, as he started across the street, a street-car was going in the direction of where he was in the street, and that he took a position between the two car-tracks and stood there until the car had passed, and that before he had time to move from that position, he was hit by Hornbeck's machine. One Marshall, who witnessed the accident, testified that he observed Hornbeck as he approached the spot where the plaintiff was standing when struck and that he was driving at approximately the rate of twenty miles an hour. He said he saw another automobile going south (Hornbeck was traveling north), and Hornbeck swerved his car to the left to avoid the other automobile, and then proceeded on at a pretty lively rate of speed until his machine struck plaintiff. Marshall, addressing Hornbeck immediately after the accident occurred,

said: "Young man, I drive a car myself, and you was driving entirely too fast past this corner." Hornbeck replied: "Yes, I know I was, and I tried to pass that car."

But it is not necessary to proceed further in a review herein of the testimony so far as it relates to the conduct of Hornbeck in the matter. As above declared, the findings that, notwithstanding the negligence of the plaintiff in not looking to see whether an automobile or other vehicle was approaching the spot where he was standing, Hornbeck saw plaintiff in a position of more or less peril in the street in ample time to have avoided the accident, if he had exercised ordinary care, and that his negligence in failing to exercise such care was the proximate cause of the injuries received by the plaintiff, are sufficiently supported. It follows that the judgment, as to Hornbeck, must be sustained.

But a more serious question, and one the decision of which has not been altogether free from difficulty, is whether Hornbeck was, at the time the injuries were received by plaintiff through the former's culpable negligence, acting within the scope of his duties as an employee of the appellant, the Union Company.

[1] It is, of course, an old and, indeed, an elementary doctrine "that, where the relation of master and servant exists, the master is responsible to third persons for the damage caused by the wrongful acts or omissions of his servants, in the course of their employment." (Shearman & Redfield on the Law of Negligence, 6th ed., sec. 141.) But, while the scope of the rule as thus abstractly given is clear and easily understood, it is often difficult to determine whether it does or does not have application to a certain given state of facts—that is to say, whether the evidence does or does not show that the servant, when he committed or omitted to do the thing which caused the damage, was acting in the course of his employment. [2] And, as is said by Judge Cooley, in his work on Torts, volume 2, third edition, page 1030, "the test of liability in all cases depends upon the question whether the injury was committed by the authority of the master, expressly conferred, or fairly implied from the nature of the employment and the duties incident to it; and, in determining the question of authority, we are to regard the object, purpose, and end of the employment." [3] Again,

the learned author, at pages 1032, 1033 of the same work, states the obvious proposition that "when a servant acts without any reference to the service for which he is employed, and not for the purpose of performing the work of his employer, but to effect some independent purpose of his own, the master is not responsible in that case for either act or omission of the servant."

[4]    The question here, then, is: Was Hornbeck at the time he committed the tort complained of by the plaintiff about the business of his employer—that is, was he engaged in some act or the execution of some purpose which, while not of the actual duties of his employment, was an incident to his duties as an employee of the Union Company? After a painstaking examination and analysis of the evidence, we have not been able to persuade ourselves that an affirmative answer to that question can justly be returned.

Before proceeding to a presentation and examination herein of the evidence bearing upon the proposition now in hand, we call attention to the fact that there is absolutely no evidence in the record justifying the finding that the accident and resultant damage occurred at 8:55 of the forenoon of October 6, 1917. The plaintiff testified that the accident occurred between a quarter to and 8 o'clock. The witness Marshall fixed the same hour as the time of the accident. The witness Bush, for the defendants, said he thought it occurred near or about 8 o'clock. The official report of the accident, made by Hornbeck to the police department of Los Angeles, states the time as 7:55, and we will assume that that hour, instead of 8:55 was approximately the time of the occurrence, and that the finding that it occurred at the time last stated was due to an inadvertence.

Recurring now to the question whether Hornbeck was about the business of the appellant, the Union Company, or acting within the scope of his duties under his contract of employment with said company at the time the plaintiff was injured as a result of his negligence, we here present the testimony upon a consideration of which that question must be determined. We may add that the only testimony received at the trial disclosing the nature or terms of the contract of employment between the appellant corporation

and Hornbeck was that of the latter.   He testified, giving his testimony in part by question and answer:

"Q. Mr. Hornbeck, you are one of the defendants in this action?   A. Yes, sir.   Q. And you remember the accident on October 6, 1917?   A. Yes.   Q. You were driving the machine at that time?   A. I was.   Q. Whose machine was that?   A. Traung Label & Lithograph Company.   Q. One of the defendants in this action?   A. Yes.   Q. And by whom were you employed at that time?   A. Union Lithograph Company.   Q. What were your duties?   A. Salesman. Q. Salesman?   A. Yes, sir. . . . Q. How long have you used this machine?   A. Since the first of the year 1917. Q. You have used it daily?   A. Yes, sir, except Sundays. Q. In what line of work?   A. Selling lithograph labels. . . . Q. You were in lawful possession of the car that morning?   A. I was, yes.   Q. And you were performing your duties at that time as an employee of the Union Lithograph Company?   A. I was going to the office at that time. Q. What was your habit in getting the machine mornings? A. When I got up at the hotel I usually went down to the Tenth Street garage, where I kept my car, and drove down to the cafeteria and got breakfast, and went over to my office.   Q. That was a part of your duty and employment? A. No, it wasn't a part of my duty and employment, but I always used the car to do it, though."

Hornbeck further testified that his hours of work for the appellant corporation were from 8 o'clock in the morning until 5 o'clock in the evening.   He also testified, in reply to questions by the attorney for the plaintiff: "Q. What were your instructions with reference to getting that car? What were your hours of work?   A. Eight o'clock in the morning until 5 at night.   Q. Was it a part of your duty to get the machine from the garage and take it down to work?   A. Yes.   I couldn't use the car unless I got it. Q. That was a part of your employment?   A. Yes.   Q. That is one of your instructions?   A. I never was instructed. The car was given to me to use in my selling, and I kept it in the garage, as anyone would."

It was further made to appear that the appellant corporation paid the expense of keeping the automobile in the garage.

We have now presented all the testimony disclosed by the record bearing upon the terms of Hornbeck's contract of employment with the Union Company and the nature of his duties under said contract.

To establish the liability of the defendant, the Union Company, for the consequences of Hornbeck's negligence, the burden rested upon the plaintiff to show that, when the accident the consequences of which to plaintiff are complained of here occurred, Hornbeck was about his employer's business—that is, engaged in doing some act within the sphere of his duties as a salesman for said corporation or which was an incident thereto. In our opinion, the evidence addressed to that issue, when imparting to it its full face value or credit, shows that the plaintiff failed to maintain that burden.

It is not disputed that the duties incumbent upon Hornbeck under his contract of employment were those of a salesman. It is not disputed that the hours during which he was required under his contract to discharge those duties were from 8 A. M. until 5 P. M. of each working day. It is also clear from the testimony, the finding of the court to the contrary notwithstanding, that the injuries to the plaintiff were received prior to 8 o'clock A. M., and before the time at which Hornbeck was required to report for duty at the appellant corporation's place of business. Hornbeck testified that the act of taking the automobile to the garage in the evening after his hours of employment had expired and the act of returning it to the appellant corporation's place of business the following morning were no part of the duties of his employment. From all this testimony (all that there is in the record bearing upon that question), it is clear that, when in the act of taking the machine to the place of business of his master on the morning of the accident, he was not engaged in discharging his duties as a salesman of his employer. In other words, the evidence fails to show that the injuries complained of by the plaintiff were "committed by the authority of Hornbeck's master, expressly conferred." (Cooley on Torts, *supra*.)

The question now to be considered, then, is: May it be said that it is fairly implied from the nature of Hornbeck's employment and the duties incident to it that the injuries to plaintiff were inflicted while Hornbeck was about

the business of the appellant corporation? In other words, may it be fairly implied from the nature of his employment and the duties incident to it that the purpose for which Hornbeck was using the machine at the time of the accident was within the scope of his contract of employment or any part of his duties under said contract? It seems to us that none but negative replies may, consistently with the evidence, be returned to these questions. In considering these questions, we will first direct our attention to what clearly appears to our minds from the evidence to have been the particular mission Hornbeck was on from the time he got the car out of the garage to the time of the accident, although, as will later, appear, we are convinced, upon the general proposition, that the act of taking the machine from the Union Company's place of business to the garage and thence to the former place between Hornbeck's working hours as a salesman was not an act incident to his duties as a salesman within the contemplation of the contract of employment as shown by the evidence.

Hornbeck, testified, it will be remembered, that it was his habit or custom, after leaving the room at the hotel at which he was residing, to go to the garage, procure the automobile, and then go to breakfast at a cafeteria, thence to his office. It will not be disputed that when going to his breakfast before the time at which he was to report for duty in the mornings he was not thus engaged in the performance of an act having any connection, either directly or indirectly, with the duties required of him under his contract of employment. Such act cannot, upon any possible course of just reasoning, be regarded as of the essence of the object, purpose and end of his employment. And, as declared, the burden was upon the plaintiff to show that, when the accident happened, Hornbeck was then engaged in executing some act or purpose connected either directly or indirectly with the duties he was under contract to perform for his employer; and, he having testified that it was his habit each morning, before the hours of his employment began, to use the automobile for the purpose of going to a cafeteria to get his breakfast, it became incumbent upon the plaintiff to show that on the morning in question and at the time of the accident he was not going to his breakfast, or using the machine for that purpose, assuming, of

course, that Hornbeck's custom of taking the machine to the garage and back to the place of business of his employer after and before his working hours each day involved acts coming (impliedly) within the scope of his duties. Now, the only testimony in the record upon that subject is that of Hornbeck himself, who testified that, when the accident occurred, he had not had breakfast. It is true that he did not say in so many words that he was then on his way to breakfast, but there is not a word of testimony in the record that he was not then on his way to his morning repast. Therefore, it is clear that when his statement that he had not had breakfast at the time of the accident is considered in connection with his uncontradicted statement that it was his habit to procure the car in the mornings, go to his breakfast in it, and then go to the office—that is, the place of business of his employer—the only fair and reasonable inference from the testimony is that when the accident occurred he was on his way to his breakfast. But, conceding that it was alone with the trial court to determine that question, the proposition remains that the custom of Hornbeck to go to his breakfast in the machine before the hour in the morning at which he was to report for duty as a salesman, for which specific services he was employed, was established by his own testimony, and that the plaintiff failed to show that he was not in the act of following that custom when the accident happened.

But, as before stated, upon the general proposition we do not think the evidence fixes liability for the accident against the appellant corporation.

Counsel for respondent, as in support of their theory that the acts of Hornbeck in taking the machine after and before the commencement of his working hours to and from the garage were in the line of his employment, lay much stress upon the following testimony given by Hornbeck in reply to questions by them: "Q. Was it a part of your duty to get the machine from the garage? A. Yes. I couldn't use the car unless I got it. Q. That was a part of your employment? A. Yes." We perceive no special significance in the answers thus made by Hornbeck to the questions asked, so far as they may be regarded as throwing any light on the question whether the taking of the car to and from the garage was among the duties for which Hornbeck was em-

ployed by the appellant corporation. The situation, as it is clearly disclosed by the testimony of Hornbeck, was simply this: The car had been turned over to Hornbeck by his employer to be used by the former in discharging his duties as a salesman during the hours of the day that he was required under his contract to perform those duties, to wit, between the hours of 8 A. M. and 5 P. M. of each day; that, between the hours of 5 P. M. of any day and 8 A. M. of the following day he was not required to perform, nor did he perform, said duties, and while it is true that he maintained control or in a measure physical possession of the car after his day's work as a salesman was completed, there is no evidence showing or tending to show that he used the car at any time between the hours of 5 o'clock P. M. and 8 o'clock A. M. for the purpose of carrying out or executing the requirements of his contract of employment with his employer. Of course, as he said, it was his duty to return the car from the garage to the place of business of his employer or "his office," as he called it, in order that he might use it in discharging his duties as a salesman. Indeed, it was necessary for him to do so for that purpose.

Thus we think it is very clear that there is no just warrant in the evidence for the finding that, when the accident occurred, Hornbeck was acting within the scope of his duties as a salesman for the appellant corporation, or that the act of returning the automobile to the place where he was to report for the discharge of the duties for which he was employed was an incident to his duties as a salesman. As counsel for the appellant corporation well say, so far as the circumstances of this case are concerned: "If the rule be extended to hold the master liable for the negligent acts of a servant while on his way to report for duty in the morning, the master would also be liable for the negligent acts of the servant while preparing his dinner-pail before leaving his home, because he is then preparing, or, in a sense, on his way, to report for duty; and, also, the master, under such a rule, would be liable for the negligent act of a servant from the time he arose from his bed in the morning in preparation to report for his day's duties. The statement of such a rule reduces it to an absurdity."

The case of *Mauchle* v. *Panama-Pacific International Exposition Co.*, 37 Cal. App. 715, [174 Pac. 400], cited by

appellants and elaborately considered in the briefs of counsel on both sides of this controversy, seems to us to be exactly in point here. In that case, the defendant Fulcher, who was superintendent of grounds of the exposition company, having finished his day's work, started to his residence in an automobile which was the property of the exposition company and kept on the grounds of said company. He was himself driving the machine, and when he reached a certain point on one of the streets in the city of San Francisco his machine struck the plaintiff in the back, and with great violence forced the latter over a handcart which he, at the time, was pushing over and along the street. The plaintiff obtained a judgment for damages against both defendants. On appeal, it was contended in behalf of the exposition company "that there was no showing that the defendant, Fulcher, at the time of the accident was performing any duty which he owed to the exposition company." The appellate court of the first district reversed the case as to the exposition company upon the facts, and the facts were, as shown by the testimony of Fulcher: That the automobile used by him on the occasion of the accident was owned by the exposition company and used by him for the purposes of his employment on the grounds; that it was also his custom to use the machine as a means of conveying himself to his home after his day's work was done, and that he kept it in front of his house until about 10 o'clock, when it would be called for by his night foreman and by him taken back to the exposition grounds, where the machine was used for the purposes of the company all night. On some occasions, Fulcher said, he would himself take the machine back to the grounds. He had at his home no garage in which to keep an automobile. The court said: "The foregoing testimony [referring to the testimony of Fulcher as synoptically stated above], being the only evidence quoted in the attempt to show responsibility on the part of the exposition company, seems to us to fall far short of so doing." Then the court refers to and distinguishes from that case the cases of *Chamberlain* v. *California Edison Co.*, 167 Cal. 500, [140 Pac. 25], and *Jessen* v. *Peterson, Nelson & Co.*, 18 Cal. App. 350, [123 Pac. 219], thereupon further saying: "The evidence above quoted does not show that Fulcher was in any way serving the expo-

sition company at the time of the accident in this case; nor does it present any evidence tending to so show.''

It will be noted that in the Mauchle case against the exposition company and Fulcher the automobile was in use either by Fulcher or his night foreman at the exposition grounds for the purposes of the exposition company at all times, day and night. In the present case, the use of the automobile for the purposes of the appellant corporation was at an end after 5 o'clock in the evening of each day, and that situation as to the machine continued until the defendant Hornbeck returned it to the appellant corporation's place of business the following morning when he reported for the performance of those duties for the discharge of which he was employed. Therefore, if there be a difference between the general facts of the two cases, the facts in the case of Mauchle v. the Exposition Co., and Fulcher are stronger against the exposition company than are the facts of the present case against the appellant corporation. But be that as it may, the fact is that, with the exception that Fulcher was going home when the accident in his case occurred and that he did not himself always return the machine to the exposition grounds, there is as to the facts no line of demarcation between the two cases. They are, in other words, substantially the same. Most assuredly, it would not be contended, upon reading the opinion in the Mauchle case, that, if the defendant Fulcher had, like Hornbeck in this case, been in the habit of leaving the car overnight in a garage near his home and returning with it to the grounds each morning as he reported for the performance of his daily duties as superintendent of the grounds, the conclusion in that case would have been different from what it was and is.

Our conclusion is, as is evident from the foregoing discussion, that the evidence in this record fails to attach liability for the injuries here complained of to the appellant corporation.

Accordingly, the judgment against the defendant Hornbeck is affirmed, and the judgment against the defendant The Union Lithograph Company is reversed.

Ellison, P. J., *pro tem.*, and Burnett, J., concurred.