[Civ. No. 12890. Second Dist., Div. Two. Feb. 24, 1942.]

DELIA BAYLESS, Appellant, v. TROY MULL et al., Respondents.

Donald Kolts for Appellant.

Jennings & Belcher and Louis E. Kearney for Respondent Central Chevrolet Company.

No appearance for Respondent Mull.

HANSON, J. pro tem.—This is an action brought by appellant against the Central Chevrolet Company and its employee Mull to recover for injuries she sustained as the result of being run down in a pedestrian lane by a motor vehicle driven by Mull and owned by the Chevrolet Company. The trial court granted a nonsuit in favor of the company but submitted the case of the plaintiff against Mull to the jury, which returned a verdict of $2,000 in plaintiff's favor. Plaintiff's appeal is not only from the action of the trial court in granting a nonsuit but also from the judgment entered upon the verdict, on the ground of its inadequacy.

The main question presented by the appeal from the judgment of nonsuit is whether by reason of the imputed negligence provisions of the Vehicle Code the employer is liable for the negligence of its employee entrusted with driving its motor vehicle, where the accident occurred while the

servant was furthering his own business and not that of his master. A subsidiary question is whether the trial court correctly ruled that as a matter of law the servant was not engaged in furthering the business of his master at the time of the accident.

The facts necessary to be stated are these: Mull was employed as a salesman by Central Chevrolet Company to demonstrate and sell its used cars. In that capacity he was privileged to take any car on his employer's used car lot to show and demonstrate it to any prospective purchaser. No restrictions were imposed upon him as to the locality to which he might drive the car nor the manner in which or the length of time he could use it; except that where he expected to be gone for some period of time it was his duty to indicate on the company's bulletin board such fact. On the day of the accident he took the car here involved at 4:30 in the afternoon and made notation of the necessary facts on the bulletin board. As he had a prospective purchaser on 61st Street just off Broadway he drove the car to the prospect's home. There he learned the prospect was not at home but would return later in the evening. He then drove down town and had dinner with a friend who lived on 79th Street just off Broadway. As he planned to return to his prospect's home he offered to take his friend to her home. Accompanied by his passenger he drove down Broadway and passed 61st Street, on which the prospect lived, in order to take his friend to her home on 79th Street before proceeding to the home of his prospect. The accident occurred at 79th Street and Broadway, where, as heretofore stated, the plaintiff was run down in a pedestrian lane crossing Broadway. Because of the view we take of plaintiff's appeal from the judgment entered on the verdict it is unnecessary to recite the injuries.

We think that under the holdings of the Supreme Court the trial court did not err in its refusal to submit to the jury the question of the employer's liability under the doctrine of *respondeat superior*. While the jury could have found that up to the time the driver reached 61st Street he was on business for the employer, it would not have been entitled to so find after he passed 61st Street on his way to the home of his guest, located on 79th Street. (*Gordoy* v. *Flaherty*, 9 Cal. (2d) 716 [72 Pac. (2d) 538].)

Whether plaintiff's case against the employer owner should have been submitted to the jury on the theory that

it was equally liable with the driver for his negligence, but with damages restricted to $5,000, depends upon the construction which should be given to section 402 of the Vehicle Code. In determining the sweep of that statute we must read it in the light of the conditions which existed at and prior to its passage and the evils it sought to remedy. The statute was enacted in 1929 and, so far as is here material, reads:

"(a) Every owner of a motor vehicle is liable and responsible for the death of or injury to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person using or operating the same *with the permission, express or implied, of such owner,* and the negligence of such person shall be imputed to the owner for all purposes of civil damages.

"(b) The liability of an owner for imputed negligence imposed by this section and not arising through the relationship of principal and agent or master and servant is limited to the amount of five thousand dollars for the death of or injury to one person in any one accident and subject to said limit as to one person is limited to the amount of ten thousand dollars with respect to the death of or injury to more than one person in any one accident and is limited to the sum of one thousand dollars for damage to property of others in any one accident." (Italics ours.)

While the language of the statute seems clear and unambiguous, it will be noted it does not define the phrase "permission . . . of the owner"; nor does it lay down any formula or test for ascertaining what amounts to a "permission" within the meaning of the statute. Moreover, the statute does not indicate whether the owner's potential liability runs with the car, so to speak, wherever it may be operated or used by the person who is entrusted with it, or whether the liability runs with the car only when it is operated or used at such times and places as the owner expressly or impliedly designates. The solution of these and other questions arising out of the statute will be aided, we think, by reference to the legal doctrines of tort liability which prevailed prior to the passage of the statute, and the conditions then existing which gave rise to it.

When the one-cylinder motor car first made its appearance on the highways the liability of its owner who was not operating it at the time of the accident was predicated solely upon

the theory of agency, or *respondeat superior*. In short, if the driver was a servant operating the car in the course of his master's business and in the scope of his employment the master was liable for the servant's tort, otherwise not; if the operator was a bailee not engaged upon the business of the owner, the latter was without liability. Initially there was an attempt to impose an absolute liability on the owner of a motor car for damage caused by it when driven by another, on the theory that the car was a dangerous instrumentality. However, this endeavor quickly fell by the wayside when possession of the "dangerous instrumentality" became so common that it was no longer in the hands of the few but of the many. Accordingly, efforts to curb the growing menace of death and injury in the operation of motor vehicles was sought in numerous other ways. Prominent among these were statutes requiring registration of motor vehicles, licenses to drive, and revocation of licenses to drive in cases where the driver had failed to satisfy an automobile injury judgment. The hope that the latter method would tend either to more careful driving or to the driver's procuring liability insurance was only partially successful, as the financially irresponsible eliminated judgments against them by adjudications in bankruptcy. It was not until 1937 that the legislature of this state hit upon the device of providing that a discharge in bankruptcy should not be effective in requiring the Department of Motor Vehicles to issue an operator's license so long as a judgment against the operator was not satisfied by actual payment. The validity of that statutory provision, in view of the language of the Bankruptcy Act, was determined only last November by the Supreme Court of the United States in *Reitz* v. *Mealey*, 314 U. S. .33 [62 S. Ct. 24, 86 L. Ed. ——).] Viewing the conditions then as they were presented to the legislature in 1929, it is apparent that the emphasis had shifted from the earlier view that the motor car was inherently a dangerous instrumentality to the view that it was such only in the hands of an incompetent or irresponsible driver. Indicative of what had transpired in the period 1905-1929 is the fact that when John D. Spreckels on May 5, 1905, appeared before the Secretary of State with $2 to have his White Steamer registered—the first in this state—there were less than 6,000 motor cars owned and operating in the state. As license plates were unknown, Mr. Spreckels was simply assigned number one. By May 11, 1929, when the governor

approved the statute above quoted, more than two million cars were registered in this state. In this setting and under the conditions narrated the legislature was urged to pass legislation requiring that all drivers take out compulsory liability insurance so as to do away with the evil of the unsatisfied judgment.

But objections to that solution were both numerous and obvious. The only practical alternative, as it appeared to the legislature, was to impose an absolute or limited liability on an owner in the position of a bailor of his car, or to extend the liability of a master for the acts of his servant in driving the car beyond the strict limits of the scope of his employment as enunciated in the doctrine of *respondeat superior*, or in imposing both these liabilities. For imposing a liability on a person in a situation analagous to that of a bailor there was legislative precedent in other states; for expanding the liability of the master and at the same time restricting the amount recoverable from him there was guiding legislative precedent not only in other states but in this state as well, in the then existing Workmen's Compensation Acts. The need and motivation for a new statutory liability in automobile injury cases were parallel to the conditions which some years before gave rise to workmen's compensation acts. Under the latter acts a liability for the injury of the employee without the employer's fault was placed on the employer where no such liability existed before; but by way of alleviating the new burden definite and arbitrary financial limits were placed upon the liability. The acts, as is well known, resulted from the changes in industry from that of few low-speed machines to a highly mechanized industry of powerful high-speed machines. In the light of these conditions and factors we think the language of the statute gives clear answer to the intent of the legislature and the alternative it adopted.

The statute (Vehicle Code, sec. 402) by apt language imputes the negligence of the driver of a motor vehicle to its owner whenever the driver, at the time of the accident, is operating or using it with the permission, express or implied, of the owner; and this regardless of whether he is or is not on business for the owner. Moreover, as has already been stated, the statute applies whether the driver is the owner's agent or servant, or not; but if he is not an agent or servant the damages which may be assessed against the owner may not in any case exceed the limits set forth in the statute. However,

if the driver is an agent or servant, and at the time of the accident is within the course of his employer's business and in the scope of his employment, damages are not then limited by the statute. Consequently, if the driver is an employee or agent of the owner it is of no legal significance, under the terms of the statute, whether he is or is not within the scope of his employment or has deviated from his employer's business to that of his own, except so far as either fact may be deemed to bear on the question of the owner's permission and the amount of the recovery.

On its surface and in its context the statute is broad, comprehensive and unequivocal in its terms and meaning. The sweeping language of the statute provides no toe-hold for a construction that would restrict the liability of the owner of a car for the negligence of the driver once he has entrusted him to take it upon the highways. But in saying that we do not imply, nor does the statute say, that the owner may not limit the time it shall continue on the highway. After all, an owner by granting to another permission to drive the car does not make him a gift of it. Moreover, while the statute does not in terms permit the owner who entrusts his car to another to restrict its use to a given territory, much less to a particular route, the statute has no extra-territorial operation and so the use may clearly be restricted to this state. Whether the statute may be read as permitting a restriction of use to some lesser general territory is not involved in this case. We assume, without deciding, that a rule of reason may here be applied. But what we do say is that the legislature did not intend by the language it used to permit an owner to show any and all restrictions he may have placed on the use of his car and thus escape liability. By the use of the phrase in the statute reading "in the business of such owner or otherwise" the legislature eliminated as a condition of liability of the owner that the driver should be on the owner's business; and by the same token, the statute being applicable to the master and servant relation, it eliminated the necessity as a basis of liability of the master-owner that the servant should be on his master's business rather than on his own.

The two decisions of our Supreme Court so heavily relied upon by respondent company do not rule contrary to what we have said herein. In *Henrietta* v. *Evans,* 10 Cal. (2d) 526 [75 Pac. (2d) 1051], the owner loaned his motor vehicle to a prospective purchaser for the sole purpose of driving from

Desert Center, California, to Beaumont, California, to pick up some papers needed to complete the sale. The prospective purchaser instead of stopping at Beaumont and returning to Desert Center drove on to Colton, California, where he had an accident. In ruling the owner was not liable the court placed its holding on the ground that an owner was entitled to restrict the use of his car to a particular place or locality for a special purpose. The opinion makes it clear that nothing short of a substantial violation of restrictions is ground for avoiding liability. In the instant case there were no express restrictions or limitations. In the case of *Engstrom* v. *Auburn Automobile Sales Corporation*, 11 Cal. (2d) 64 [77 Pac. (2d) 1059], the defendant automobile agency lent one of its automobiles to a prospective purchaser with instructions to return it not later than 5 o'clock p. m. on the same day. The purchaser kept it over night and was involved in an accident the next day. It was held that the permissive use had ceased prior to the accident and hence the owner was not liable under the statute. The case is not in point as we have here no question involving a limitation of time. The only other case in the Supreme Court which is cited and relied upon by respondent is *Gordoy* v. *Flaherty, supra.* That was a case where the employee at the time of the accident was driving his personally owned automobile, and *a fortiori* the case is not within the statute and possesses no legal significance in the problem before us.

In the District Courts of Appeal only three cases have had occasion to construe and apply the phrase "permission . . . of such owner." One, the case of *di Rebaylio* v. *Herndon,* 6 Cal. App. (2d) 567 [44 Pac. (2d) 581], is merely another case of express limitation of time. Another is *Gousse* v. *Lowe,* 41 Cal. App. 715 [183 Pac. 295], which involved the taking of the employer's automobile by a chauffeur contrary to instructions and for the personal use only of the chauffeur, and so it is not of any controlling importance here. In the third case, *Montanya* v. *Brown,* 31 Cal. App. (2d) 642 [88 Pac. (2d) 745] (hearing denied by the Supreme Court), the defendant owners of the motor car involved in the accident conceded they had given the driver permission to drive their car, but asked that the jury be instructed that their liability could not exceed $5,000. The trial court refused to so instruct, and upon the return of a verdict for $35,000 refused to restrict the judgment to $5,000 or to grant a new trial. The only issue in

the case was whether there was sufficient evidence of the agency of the driver to sustain a verdict not limited to $5,000. On its facts the case is not in point on any question raised in the instant case.

In construing statutes of other states which contain the exact language or the substance of that which is found in the first paragraph of our statute above set forth, several of the courts of such states have held that the language has no application to a master-servant case; others have held the contrary. The argument for excluding the master and servant, principal and agent cases is that the statute is essentially penal and so should be strictly construed. These holdings are not persuasive here, as we think it plain from the language used in the second paragraph of our statute that it is applicable to a master and servant, principal and agent, and any other case where an owner of a motor vehicle has granted permission, express or implied, to another to drive his motor vehicle. By the language found in the second paragraph reading, "The liability of an owner for imputed negligence imposed by this section and not arising through the relationship of principal and agent or master and servant is limited to . . .", it is made plain that the relationships mentioned are within the sweep of the statute. If it were intended to exclude such relationships either they would not have been mentioned at all, as is the case where the courts have held them excluded, or express language would have been used to exclude them, and not language of the character used in the second paragraph of our statute. Moreover, we are not entitled strictly to construe the statute because it imposes a new liability unknown to the common law, but rather are required by reason of the provisions of Civil Code, section 4, to give it a liberal construction.

Aside from the questions we have already passed upon, the only real difficulty, apparently, which the courts of last resort have encountered, in these imputed negligence statutes, is in interpreting what is meant by the phrase "with the permission, express or implied, of such owner," as found in the first paragraph of our statute. In some states where the statutory phrase is substantially identical or similar to ours it is held that when an owner consents to the use of his motor vehicle by another he is equally liable with such other for the latter's negligence, even though he expressly or impliedly restricted his consent to its use for a particular or limited purpose, as, for example, to a specific place and return, or

by a certain route, or for a limited time. Other courts have construed the phrase somewhat more narrowly. This divergence of opinion has come about in various ways. Courts which hold that the imputed negligence statutes do not apply to cases where the doctrine of *respondeat superior* is applicable argue that the legislature could not have intended to impose on a bailor a greater liability than is imposed upon a master under the *respondeat superior* doctrine, and so permit the owner to introduce evidence bearing on a restricted use as permitted and limited in the master-servant cases. Other courts take the position that the purpose of the legislature was to increase the liability of a non-culpable owner of a motor vehicle for its operation on a public highway. In the view of these courts the foundation of the statutory liability is the *permission* given to another to use an instrumentality which if improperly used is a danger and a menace to the public. They reason that as the owner can avoid the liability by refusing to permit the use of his motor car by another or procure insurance to protect him, he should not be permitted to avoid the consequences of the operator's negligence and escape liability therefor by secret restrictions limiting the right to use the motor vehicle. The view of these courts is well expressed by the Massachusetts court in *Guzenfield* v. *Liberty Mut. Ins. Co.*, 286 Mass. 133 [190 N. E. 23, 24], where it said "the liability . . . so to speak, runs with the car, unaffected by the owner's action unless its presence on the public ways was without his sanction." The question before us, as to the liability of a master for the negligence of his servant who at the moment of the accident is not furthering his master's business, is an open one in the Supreme Court of this state. The question has not been passed on in any of the District Courts of Appeal except in *Gammon* v. *Wales*, 115 Cal. App. 133 [300 Pac. 988] (petition for hearing denied by the Supreme Court), where the court expressly held that an owner of a motor vehicle is liable under the statute for the negligence of its employee-driver even though at the time of the accident he was not acting in the course of his employment.

From what we have said it is plain that the master was equally liable with the servant for the latter's negligence, and so the case should have been submitted to the jury on the basis of the statutory liability.

So far as the case of the employer is concerned, it only

remains to say a word in response to its oblique suggestion that there is a question as to whether it was the owner of the car. If it was not, it is to be noted that its argument stops with the suggestion. We see no reason to doubt the employer was the owner, and every reason to say it was. The suggestion merits no further discussion. (See *Swing* v. *Lingo,* 129 Cal. App. 518 [19 Pac. (2d) 56], and *McCalla* v. *Grosse,* 42 Cal. App. (2d) 546 [109 Pac. (2d) 358].)

The remaining question is whether the verdict against the employee was inadequate and should be set aside. Aside from a recital of the injuries of the plaintiff as testified to by her and her witnesses, she fails to point out a single valid reason for supposing that the jury did not correctly appraise the extent of her injuries and the compensation that should be allowed therefor. Accordingly, we see no basis for a reversal of the judgment against the employee Mull.

For the reasons indicated the order granting the nonsuit in favor of respondent Central Chevrolet Company is reversed and the judgment against respondent Mull is affirmed. As no appeal lies from an order denying a new trial, it is dismissed.

So ordered.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied March 16, 1942, and respondent Central Chevrolet Company's petition for a hearing by the Supreme Court was denied April 23, 1942. Curtis, J., and Edmonds, J., voted for a hearing.