[Civ. No. 13833.   First Dist., Div. One.   Nov. 23, 1948.]

LLOYD C. TYSON et al., Respondents, v. CLAYTON PETER ROMEY et al., Appellants.

Francis Carroll, John Bohnett and Carroll, Davis & Freidenrich for Appellants.

James F. Boccardo for Respondents.

WARD, J.—This is a personal injury action in which a judgment for $25,000 after verdict by a jury was entered in

favor of plaintiffs. On motion for a new trial the amount was reduced to $18,500. Defendant Romey appealed from the judgment and from the order denying his motion for a new trial. The defendant American National Insurance Company also appealed from the judgment against it, and from the order denying the motion for a new trial. The purported appeals from the orders denying each defendant a new trial are not authorized as appealable orders (Code Civ. Proc., § 963) and must be dismissed. ▇ The appeal by defendant Romey from the judgment does not conform to the provisions of part III, Rules on Appeal, and must be dismissed.

In the opening brief the second named defendant—the insurance company—states: ''This appeal is taken by the American National Insurance Co. from the order and the judgment for $18,500.00 rendered against it.'' The first point urged is that the insurance company may not be held liable for the employee Romey's alleged negligence as the latter was not acting within the scope of his employment at the time of the collision of automobiles which resulted in the death of Norman Otis Tyson, a minor of the age of 5 years. The child was the son of plaintiffs. The second contention is that the judgment is excessive. The insurance company states that ''It is admitted the evidence is sufficient to sustain the jury's finding that the defendant Romey was negligent, and that the plaintiffs were free of contributory negligence. It is not contended that there was error in the instructions or that Romey was not an employee of the company.''

▇ The evidence shows that the defendant Romey had no definite hours of employment and used his own automobile as a means of transportation in the sale of life insurance policies and the collection of premiums for defendant insurance company. On the day of the accident Romey had left his home with the intention of going to the insurance company's office. In connection with his duties as an employee, several blocks from the scene of the accident he stopped to make a collection of a premium. He also intended ''to pick up our assistant superintendent in the office.'' Defendant insurance company contends that there is no evidence that the employee's duties required him to go to the office on the morning of the accident or any other morning, and no evidence that he was required to go by automobile. There may be no direct evidence on the matters referred to by appellant Romey in his testimony, but there is evidence that it was customary for him to pick up a coemployee when he reported to the office for a conference.

A reasonable deduction may be drawn that his duties required him to go to the office on the morning in question. Romey testified: ''I was going over to a party on Irving Street to collect a premium, and the reason for it was that it was necessary that I transfer that, and before I transferred it, transferred the business, I would have to collect up to at least an even date, and that is the reason why I was, one of the reasons, why I went over there; and the other one was to pick up our assistant superintendent in the office.''

Numerous citations may be supplied seemingly upholding inconsistent views on the scope of employment as applied to the ''going and coming'' rule on facts based upon actual or implied findings. Among appellants' citations are found: *Nussbaum* v. *Traung Label & L. Co.*, 46 Cal.App. 561 [189 P. 728]; *Bayless* v. *Mull*, 50 Cal.App.2d 66 [122 P.2d 608]; *Postal Tel.-Cable Co.* v. *Industrial Acc. Com.*, 1 Cal.2d 730 [37 P.2d 441]; *Gordoy* v. *Flaherty*, 9 Cal.2d 716 [72 P.2d 538]. Plaintiffs' list is headed by *Richards* v. *Metropolitan Life Ins. Co.*, 19 Cal.2d 236 [120 P.2d 650]; *Robinson* v. *George*, 16 Cal.2d 238 [105 P.2d 914] and *Curcic* v. *Nelson Display Co.*, 19 Cal.App.2d 46 [64 P.2d 1153]. It is not necessary to analyze the above or other cases. The rule is that when there is a substantial departure by the agent from his principal's business, the principal is not liable, but the opposite conclusion should be reached if the act or conduct of the agent is fairly and reasonably an incidental event or circumstance connected with the assigned work. (See Restatement of the Law, Agency, § 228 et seq.) The trial court fairly covered this issue in the following instructions: ''It is not necessary that a specific act or failure to act be authorized as such by the principal to bring it within the scope of the agent's authority. It is within the scope of his authority if it is done while the agent is engaged in the transaction of business which has been assigned to him for attention by his principal, while the agent is doing any reasonable thing which his contract of employment expressly or impliedly authorizes him to do, and which may reasonably be said to have been implied by that contract as necessarily or probably incidental to the employment.'' Scope of employment is a question of fact. (See Restatement of the Law, Agency, § 228 et seq.) On appeal all reasonable inferences must be viewed in the light of the findings of the trier of the facts. (*Vaughn* v.

*Jonas*, 31 Cal.2d 586 [191 P.2d 432] ; *Fackrell* v. *City of San Diego*, 26 Cal.2d 196 [157 P.2d 625, 158 A.L.R. 625].)

█ Appellants present an extended review of California cases involving awards of damages for the death of a minor child. As is true in other cases involving the question of excessive judgment, it should be noted here that the remedy for excessive verdicts is primarily in the hands of the judge who presides at the trial. It is his duty to carefully weigh the evidence and not allow a verdict to stand if more damages are assessed than may be reasonably concluded the plaintiff will actually suffer. The appellate court's power ''over excessive damages exists only when the facts are such that the excess appears as a matter of law, or is such as to suggest at first blush, passion, prejudice, or corruption on the part of the jury. (See, *Hale* v. *San Bernardino etc. Co.*, 156 Cal. 716 [106 P. 83] ; *Wheaton* v. *North Beach etc. Co.*, 36 Cal. 591.) Practically, the trial court must bear the whole responsibility in every case.'' (*Bond* v. *United Railroads*, 159 Cal. 270, 286 [113 P. 366, Ann.Cas. 1912C 50, 48 L.R.A.N.S. 687] ; to the same effect is *Holmes* v. *Southern Cal. Edison Co.*, 78 Cal.App.2d 43, 51-52 [177 P.2d 32].) The amount of the verdict was reduced by the trial court from $25,000 to $18,500.

The contention of appellants is that the award is excessive as a matter of law; that ''It is obviously the result of sympathy and of passion and prejudice directed against the defendant insurance company and is on its face disproportionate to the financial loss sustained by the plaintiffs.'' █ The ordinary rule in a personal injury or property damage case is that the jury should not be permitted to know whether the party responsible for an accident is insured. This rule appears to be based upon the theory that a jury is inclined to increase the amount of damages if they know that the party responsible has contracted with an insurance company to assume liability for personal injury or property damage. See *Arnold* v. *California Portland C. Co.*, 41 Cal.App. 420 [183 P. 171] ; *Citti* v. *Bava*, 204 Cal. 136 [266 P. 954] ; *Elford* v. *Hiltabrand*, 63 Cal.App.2d 65 [146 P.2d 510]. Such theory is not applicable to the facts of this case. The defendant insurance company does not appear as the insurer of defendant Romey or of his employer, American National Insurance Company. The defendant insurance company appears in this case as any other employer.

The remaining contention that the amount fixed is due to ''passion and prejudice'' might be aimed at the jury in

fixing $25,000 and likewise toward the trial judge who fixed the amount at $18,500, but in the present case appellants confine their attack to the $18,500 amount. In reducing the amount to $18,500 there is nothing in the record to indicate that the trial judge was ruled by passion and prejudice unless the amount may be regarded in no other light than as excessive.

On the question of the amount, $18,500 might have indicated an excessive figure some years ago, but in view of subsequent verdicts the amount is not disproportionate, though this may be the highest award assessed in this state for the death of a 5-year-old child. "It is only in a case where the amount of the award of general damages is so disproportionate to the injuries suffered that the result reached may be said to shock the conscience, that an appellate court will step in and reverse a judgment because of greatly excessive or grossly inadequate general damages." (*Wallace* v. *Miller,* 26 Cal.App.2d 55, 60 [78 P.2d 745].)

In *Wheeler* v. *Brown,* 47 Cal.App.2d 239 [117 P.2d 707], Richard Wheeler, an adolescent was in the act of searching his pockets for theatre tickets when he was hit by an automobile. The jury returned a verdict of $20,000, which was reduced to $15,000 on motion for new trial. On appeal the judgment was affirmed upon the theory that the "excess" did not appear as a matter of law. Appellants make the point that appellate courts, in sustaining awards for the death of adolescents, have relied upon the existence of actual pecuniary loss of contributions and services during the son's minority. *Foerster* v. *Direito,* 75 Cal.App.2d 323 [170 P.2d 986], discussed by appellants, illustrates this. At page 333 the court observed in upholding a $15,000 award: "George Foerster was a capable, industrious, healthy and considerate 17-year-old son who actually contributed to his mother's support from $37 to $75 per month for several years prior to his death." However, appellate courts have not ruled that only where there is actual pecuniary loss of contributions can the surviving parent recover damages for the death of a child.

*Couch* v. *Pacific Gas & Elec. Co.,* 80 Cal.App.2d 857, 867 [183 P.2d 91], states, in upholding an award of $15,000 general damages for the death of a 10-month-old infant: "Appellant's final contention is that a new trial should have been granted because the verdict was so excessive as to indicate that it was the result of passion and prejudice. We cannot say that the sum allowed by the court is excessive. In the recent case of *Brown* v. *Boehm,* 78 Cal.App.2d 595 [178 P.2d

49] (hearing in Supreme Court denied), we had occasion to consider the question of excessive verdicts, and there held that the remedy for such verdicts is practically committed to the judge who presides in the court below, who is authorized to weigh the evidence and who, it is presumed, will not allow a verdict for the full amount to stand if he believes it gives more than the pecuniary loss that plaintiffs may be reasonably supposed to suffer. Here the trial court performed that duty and reduced the amount of the verdict. [$27,500.] Under the decisions cited in the ˋBrown case, we cannot say that the amount fixed by the court is excessive. As there pointed out, the value of the dollar has materially decreased in recent years, and that fact˙ has been recognized by appellate courts in refusing to reduce verdicts which formerly might have been considered excessive.''

Appellants continue to argue that actual pecuniary loss is the basis for damage for the death of a relative. The rule is that comfort and society may be considered. The allowance for the value of the comfort and society of a child, and subsequently protection which the child may afford to a parent, must bear a reasonable relation to prospective pecuniary loss. (*Hunton* v. *California Portland C. Co.*, 64 Cal. App.2d 876 [149 P.2d 471].) The pecuniary assistance of a 5-year-old child may not be accurately tested or weighed. The pecuniary loss for services of a child to a parent may be as hard to estimate as recompense for the loss of the society of a child, but it is the duty of finders of fact to determine such question. In doing so the prospect of ''deflation'' or present ''inflation'' may be given reasonable consideration. Unless the finding is prejudicially disproportionate to all of the surrounding circumstances it should not be disturbed on appeal.

Based upon the reasons heretofore stated the two appeals by defendant Romey and the appeal by American National Insurance Company from the order denying the motion for a new trial are dismissed. Otherwise the judgment is affirmed.

Bray, J., concurred.

PETERS, P. J.—I concur.

I agree that the evidence supports the implied finding of the jury that Romey at the time of the accident was the agent of appellant, acting within the course and scope of his employment, and that the damages are not excessive as a matter of law. I therefore concur with everything said in the majority

opinion. But there is an additional reason why appellant is in no legal position to now contend that Romey was not acting in the course of his employment at the time of the accident.

The transcript shows that at no time during the trial did appellant contend that Romey was not acting within the scope of his employment at the time of the accident. The only testimony on this issue was given by Romey, who was called under section 2055 of the Code of Civil Procedure by respondent. When counsel for appellant examined Romey he merely asked him to restate his testimony about what he was doing at the time of the accident. Appellant produced no contrary evidence at all. Of course, the burden on this issue was on respondent and not on appellant, but it is quite apparent that, at the trial, appellant made no serious contention on this issue. With the record in this condition, counsel for appellant, in his argument to the jury, stated that he was indifferent on this issue. After telling the jury that it had heard Romey testify as to his duties, counsel for appellant stated: ''However, his Honor will give you an instruction covering that, and I am not going to belabor the implied construction of the facts. If you believe that Mr. Romey was acting within the course and scope of his employment, that is all right with us. You are determining that factor, and your determination of it will be satisfactory to us. I am not urging you to find one way or the other. After you have heard the instructions, you should be able to determine if you believe he was not acting as our agent and in the course of the scope of his employment—if you do so determine and believe, then of course your verdict should be returned in our favor. But as I say, that is not a matter I am stressing to you. Whatever you find is all right with us.''

This, in my opinion, amounted to either a waiver of the point, or amounted to invited error. It likewise is an attempt to change the theory of the case on appeal. Counsel should not be permitted to take a position before the jury by stating that he does not care about how they find on a particular issue, thus implying that he is not urging the point, and then, after he has secured whatever benefit he believed he would get by taking that position, challenge the jury's finding as being unsupported. For these reasons, in my opinion, appellant is in no legal position to urge the point under consideration.