**PACIFIC FREIGHT LINES and Sidney S. Russell, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 14926.**

United States Court of Appeals Ninth Circuit.

Dec. 14, 1956.

192

Robert W. Stevenson, Los Angeles, Cal., Anthony J. Calabro, Leslie G. Mac-Gowan, San Francisco, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Max F. Deutz and Joseph D. Mullender, Jr., Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before BONE, FEE and CHAMBERS, Circuit Judges.

BONE, Circuit Judge.

Plaintiffs below appeal from a judgment in favor of defendant-appellee, the United States. The action, laid under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq., was brought by appellants Pacific Freight Lines (hereafter "Pacific"), suing for property damage, and Sidney S. Russell, suing for personal injuries, as a result of a collision between a vehicle owned by Pacific and driven by Russell and a vehicle owned by the United States of America (hereafter "Government") and driven by Eugene A. Phelps, a member of the United States Air Force. Judgment was rendered in favor of Pacific and Russell against defendant Phelps, and in favor of the Government and against the plaintiffs.

The dominating issue on this appeal is whether Eugene A. Phelps was acting within the scope of his service or employment at the time of the collision. The following summary of facts before

the trial court is necessary to determine the issue.

On February 4, 1954, Eugene A. Phelps, an airman second class in the United States Air Force, was stationed at George Air Force Base, hereafter called "Base", located near Victorville, California. He was a driver in the staff car section of the motor pool at this Base. On that date, at approximately 3:00 o'clock in the afternoon, Phelps was ordered to drive an Air Force officer from the Base to Los Angeles, and then to return immediately to the Base. Los Angeles is located approximately 115 miles West of the Base.

Phelps left the officer at the Biltmore Hotel in Los Angeles at approximately 6:00 o'clock p. m., and began the return trip to the Base. At about 7:00 o'clock p. m. he stopped in Pasadena, California, for dinner, after which he continued on the return trip in a general easterly direction toward the Base. It was customary for drivers of the Air Base motor pool to stop for meals if their work required their absence from the Base at meal times.

At approximately 9:00 o'clock p. m. Phelps stopped again at a cafe in San Bernardino, California, where he drank some beer and remained until approximately 12:00 o'clock midnight, at which time he again continued on the return trip in a general easterly direction toward the Base.

After leaving San Bernardino Phelps stopped and picked up a hitchhiker, a uniformed man who was either in the Army or Marine Corps. He asked this hitchhiker to drive the car. The hitchhiker took over the car and drove it in a general easterly direction on U. S. Highway 66, while Phelps proceeded to go to sleep in the car after asking the hitchhiker to wake him "when we got to the share-your-ride station in Victorville," which was on Highway 66. (As respects this particular incident of the trip there was testimony that it was permissible for motor pool drivers to park their car in a safe place so the driver might sleep should he become drowsy while driving,

but against the rules of the Base to entrust the car to another.)

When Phelps finally awoke, it was about 5:00 o'clock a. m., February 5, 1954, and he and the car were then in Barstow, California, which is located on U. S. Highway 66, approximately 35 miles East of (and that far beyond) the point where the road leading off to the Base intersects U. S. Highway 66. The hitchhiker left the car at Barstow, and Phelps then began to drive the car back toward the Base which was in a generally westerly direction on U. S. Highway 66.

About 5:15 o'clock a. m., on February 5, 1954 the car driven by Phelps had reached a point on Highway 66 approximately ten miles West of Barstow, California, and 25 miles East of the point on U. S. 66 where said highway is intersected by the road leading to the Base. At the time and place indicated, Phelps negligently operated the automobile he was driving and caused it to cross over the center line of the highway and collide with the Sterling tank truck owned by Pacific and then being driven by Russell, which truck was proceeding in the opposite and easterly direction toward Barstow on U. S. Highway 66. Both Phelps and Russell were personally injured, and the truck was damaged.

On the set of facts above narrated, the lower court found that Phelps was not acting within the scope of his office or employment at the time of the collision, and rendered judgment in favor of the United States against both plaintiffs, and dismissed the complaint against the United States.

On the basis of the facts set forth above, and because they are not controverted, appellants would have this Court declare as a matter of law that Phelps was acting within the scope of his duties to and employment by the Government at the time the collision occurred.

■ The case is governed by California law, Williams v. United States, 1955, 350 U.S. 857, 76 S.Ct. 100. The California Supreme Court held in Loper

v. Morrison, 1944, 23 Cal.2d 600, 605–606, 145 P.2d 1, 3–4, that:

"In each case involving scope of employment all of the relevant circumstances must be considered and weighed in relation to one another. [Cases cited omitted.] Under these authorities the factors to be considered, insofar as pertinent to this case, are the intent of the employee, the nature, time, and place of his conduct, his actual and implied authority, the work he was hired to do, the incidental acts that the employer should reasonably have expected would be done, and the amount of freedom allowed the employee in performing his duties."

■ Giving consideration to all these factors, we think that the trial judge reached a correct conclusion based on California law. Even assuming (as appellants contend) that at the time of the accident Phelps was doing what he was employed to do, that is to say, he was driving a Government car; that he *intended* to return to the Base; and that he is chargeable for the action of the hitchhiker in driving on into Barstow, we also believe and conclude that by California law Phelps had so exceeded the proper time and space limitations of his employment as to have departed from it.

An important California case is Gordoy v. Flaherty, 1937, 9 Cal.2d 716, 72 P.2d 538. In this case the question was whether or not the employee was acting within the scope of his employment. The employee, Flaherty, was occasionally required to drive into town to get change and to deliver the money to the employer's (Union Oil Co.) branch office. No route was prescribed. While at the bank Flaherty met the mother of a friend and fellow worker, who asked him to take her to her home in Santa Clara, a few miles from San Jose. He

agreed, assisted her into the car, and then drove toward the company office. But instead of stopping there, Flaherty continued driving in the direction of her home. The collision took place *three blocks past the office*. On these facts the California Supreme Court said:

"It seems perfectly clear that *at the time of the accident* Flaherty had departed from his employment and was performing services for another, outside its scope. This is not a case of a choice of different possible routes, or minor or immaterial deviations in the course of business errands. If Flaherty had taken Mrs. Frantz as a passenger, and driven her to some point *between* the bank and the branch office, *or* had even deviated *by a short distance from the most direct route*, it might still be held that he was within the general scope of his employment at the time of the accident. [Citations.] *But it was not a mere deviation when he actually passed the company office and proceeded in the direction of a place which had no relation to the company business. This was a real departure from the employment, despite the fact that he intended subsequently to return to his employer's business; and during such departure the employer was not liable for the employee's tort.* [Citations.]" 9 Cal.2d at pages 717–718, 72 P.2d at page 539. (Emphasis supplied.)

Later cases have followed the doctrine of this case, Bayless v. Mull, 1942, 50 Cal.App.2d 66, 68, 122 P.2d 608, 610; Loos v. Boston Shoe Co., 1954, 123 Cal. App.2d 564, 569, 266 P.2d 884, 886, 887. See Cain v. Marquez, 1939, 31 Cal.App. 2d 430, 441–442, 88 P.2d 200, 204.

The Gordoy case,[1] supra, is close to the present case on its facts. The car in charge of Phelps did not go a mere three blocks *beyond* the road which intersected

---

1. This case, Gordoy v. Flaherty, supra, was discussed by the district judge in his oral opinion, yet it is not cited in appellants' brief, and no effort was made to analyze it in terms of the facts before us. While this case is cited in the Government's brief, appellants did not discuss the case at oral argument.

U. S. Highway 66 and turned off toward the Air Base. To the contrary, it was driven *35 miles beyond this intersection*, and on the way back toward the Base, it was at least *25 miles beyond* the road leading to the Base at the time of the collision. If, under California law, going a distance of three blocks constitutes a departure from employment, we must conclude that being a distance of 25 miles *beyond* the road leading to the Base at the time of collision, fully supports a finding that Phelps was not acting within the scope of his service or employment at the time of the collision.

Appellants contend that the district judge overly emphasized the time and space factors without sufficient emphasis on other factors. We disagree. Testimonial evidence shows that drivers were allowed about three and one-half hours for the trip into Los Angeles, and that with the allowance for eating time the entire trip should not have required more than eight hours. Phelps left for Los Angeles at 3:00 p. m., February 4, and the accident occurred at about 5:15 a. m., February 5, some fourteen hours after the trip was commenced, and some six hours after reasonable and allowed time had elapsed for completion of the trip (including meal time) from the Air Base to Los Angeles and back to the Base. In terms of *space* the collision occurred twenty-five miles East of the road intersection leading to the Base, after the car had been driven to Barstow, a city 35 miles "out of the way" on the route to the Base.[2]

Since the California Supreme Court, in Gordoy v. Flaherty, supra, found, on facts more favorable to a plaintiff than exist here, that the driver departed from his employment, the trial judge correctly found that Phelps was not acting within the scope of his service or employment, and that (in the words of the trial judge in his oral opinion) Phelps "* * * departed on a venture of his own * * * and that in both time and place it was a complete departure, which exonerates the Government from liability."

### Jurisdictional Question.

■■ There is a jurisdictional question in this case which has not received attention of counsel on this appeal. "An appellate federal court must satisfy itself not only of its own jurisdiction, but also of that of the lower courts in a cause under review." Mitchell v. Maurer, 1934, 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338. The scanty trial record before us does not include any evidence or testimony at trial which might have served to establish diversity of citizenship between appellants and Phelps. By reason of this omission (if it be an omission) the appeal record does not establish that the lower court had jurisdiction to enter the judgment against Phelps. Plaintiffs' complaint does not name the state in which Pacific is incorporated (it alleges only that it is "authorized" to do business in California), nor does it name the state (or states) of which Russell and Phelps are citizens. Thus, on its face, the complaint fails to show the diversity of citizenship between plaintiffs and Phelps necessary to give the district court jurisdiction as between these parties to the action. Benbow v. Wolf, 1954, 9 Cir., 217 F.2d 203; United States v. Dooley,

---

2. Because appellant repeatedly cites Gates v. Daley, 1921, 54 Cal.App. 654, 202 P. 467, we deem it appropriate to discuss it briefly. In that case the driver of an "autotruck" became fatigued while driving in the regular course of his employment. In order to rest, he allowed his wife who was accompanying him to drive. It was while she was driving that the accident which led to the litigation occurred. The driver had no authority to engage a substitute or assistant to drive the truck. The employer was held liable for the injury to the plaintiff stemming from the accident while the third person was driving since the act was "* * * done in the presence of the servant and by his direction, or with his acquiescence * * *." But such is not the case here, for no third person driver was involved at the time of the collision. Phelps himself was driving the car, and driving it outside the time and space limitations of his service.

1955, 9 Cir., 231 F.2d 423. The appeal record comes to us in abbreviated form. It may be that in preparing the record on appeal, trial evidence establishing diversity of citizenship was omitted. Sun Printing & Publishing Association v. Edwards, 1904, 194 U.S. 377, 24 S.Ct. 696, 48 L.Ed. 1027; Cunard S.S. Co. Ltd. v. Sullivan, 1925, 2 Cir., 6 F.2d 383. But on the pleadings and record now before this Court, the judgment against Phelps is certainly without basis in jurisdiction.

Phelps failed to appeal from the judgment against him and counsel for appellants have not suggested or sought a remand of the case to the lower court for the purpose of there amending their complaints to aver necessary jurisdictional facts. Nor have they sought permission to so amend their complaints on this appeal. 28 U.S.C.A. § 1653, provides that:

"Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."

The judgment in favor of the United States is affirmed.